UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WITKIN,<br><br>    Plaintiff,<br><br>    v.<br><br>S. SOLIS,<br><br>    Defendant. | Case No.  1:12-cv-01256-AWI-MJS<br><br>**FINDINGS AND RECOMMENDATIONS GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR A THIRTY-DAY EXTENSION (NUNC PRO TUNC)**<br><br>**ORDER GRANTING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE**<br><br>**(ECF Nos. 39, 40, & 41)**<br><br>**CASE TO REMAIN OPEN**<br><br>**FOURTEEN (14) DAY DEADLINE** |

I.   **INTRODUCTION AND PROCEDURAL HISTORY**

Plaintiff Michael Witkin is a prisoner proceeding pro se and in forma pauperus in this civil rights action filed pursuant to 42 U.S.C. § 1983.  At all times relevant to this action, Plaintiff was incarcerated at Pleasant Valley State Prison ("PVSP") in Coalinga, California.  This case proceeds on Plaintiff's Second Amended Complaint, filed May 20, 2013, alleging that Defendant S. Solis intentionally converted funds from Plaintiff's inmate trust account and retaliated against Plaintiff for reporting the conversion by

denying him access to the prison law library.  (ECF No. 17.)  Defendant has declined Magistrate Judge jurisdiction.  (ECF No. 28.)

Under the Court's original scheduling order, the deadline for all dispositive motions, including motions for summary judgement, was August 15, 2015.  On motion by Defendant, this deadline was continued to December 15, 2015.  (ECF No. 36.)  On December 11, 2015, Defendant filed a motion for a thirty-day extension of time to file a dispositive motion on the grounds that new counsel was assigned to this case on December 2, 2015. (ECF No. 37.)  The Court did not issue an order addressing Defendant's request for a thirty-day extension. Defendant then filed the instant motion for summary judgment on January 15, 2016.  (ECF No. 39.)  Also on January 15, 2016, Defendant filed a motion requesting the Court take judicial notice of California Code of Regulation, Title 15, Sections 3120 to 3124.  (ECF No. 40.)  Plaintiff filed an opposition to Defendant's motion for summary judgment on February 8, 2016.  (ECF No. 42.)  Defendant filed a reply on February 16, 2016.  (ECF No. 43.) This matter is submitted. E.D. Cal. Local Rule 230(*l*).

## II. **PLAINTIFF'S ALLEGATIONS**

Plaintiff's claims stem from his use of the PVSP law library in 2010 and 2011.  On October 21, 2010, Plaintiff submitted a copy request form to law librarian Defendant S. Solis.  Although Plaintiff only intended to request 52 copied pages, he received a total of 104 unreadable and unusable pages. The cost for all 104 pages was deducted from Plaintiff's inmate trust account, $10.40 in total.

Plaintiff submitted an Inmate Appeal Form 602 ("602") against Defendant on November 8, 2010, alleging that Defendant intentionally converted the funds in Plaintiff's inmate trust account. Defendant then retaliated against Plaintiff by denying him Priority Legal User ("PLU") status so that he was unable to access the library on several occasions between the dates of February 16, 2011, and March 1, 2011, and again between April 11 and April 21, 2011.  Because he did not have sufficient access

to the law library, he did not have enough time to properly research and draft his filings in his federal habeas case.

### III. LEGAL STANDARD

Any party may move for summary judgment, and "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. See Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." Id. at 984. In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. (citing Celotex, 477 U.S. at 323). Once the moving party has met its burden, the nonmoving party must point to "specific facts showing that there is a genuine issue for trial." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)).

3

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. See Liberty Lobby, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." Soremekun, 509 F.3d at 984.

## IV.  FACTS[1]

All facts are deemed undisputed unless otherwise noted:

Plaintiff was incarcerated at PVSP, Facility C, from September 2009 to September 2012. Pl.'s Dep. 8:25-9:8. Defendant was employed at PVSP as a law librarian from August 2010 to July 2011. Solis Decl. ¶ 1.

### A.  Administration of Prison Law Library

Law library users at PVSP fall into two categories: General Legal Users ("GLUs") and Priority Legal Users ("PLUs").[2] 15 Cal. Code Regs. § 3122(b). PLUs are given greater access to the law library than GLUs, and a prisoner achieves PLU status when he can show that he has an upcoming court deadline. Id. § 3122(b)(1). To achieve PLU status, a prisoner has to submit a form to the law librarian indicating his court deadline, and if the librarian approves the request, he or she will notify corrections

---

[1] Curiously, both parties cite heavily to Plaintiff's deposition testimony as support for certain facts pertaining to prison administration and law library procedures. For example, each cites to this testimony as evidence that the law library had a maximum capacity of approximately 18 inmates and was closed on weekends. Pl. Dep. 30:6-14; 32:1-6; 33:24-34:2. An inmate, however, is not authorized to testify on prison administrative matters merely because he is subject to certain prison regulations. Fed. R. Evid. 602, 701-703. In light of this evidentiary deficiency, the Court has painstakingly searched the record for other, more reliable sources to support the facts alleged. The Court has not considered facts for which it was unable to find independent support.

[2] The Court will grant Defendant's request for judicial notice of California Code of Regulations, Title 15, Sections 3120 to 3124, regarding inmate law library usage. Rocky Mountain Farmers Union v. Goldstene, 719 F. Supp. 2d 1170, 1184 (E.D. Cal. 2010); see also MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

officers to bring the prisoner to the library during the extended PLU hours. Id. An inmate who does not have PLU status can still access the law library on GLU status. Id. § 3122(b).

### B. Alleged Conversion of Plaintiff's Inmate Trust Account Funds

On October 21, 2010, Plaintiff requested a copy job from Defendant in the law library. Pl. Dep. 42:24-43:9. Though Plaintiff had intended to request only one copy of a 52 page file, he accidentally filled out the form incorrectly and requested "52" sets of copies. Pl. Dep. 44:20-45:18. Assuming Plaintiff meant to request only two sets of copies, not 52, Defendant made two copies and gave both to Plaintiff. Pl. Opp'n Ex. C, "D. Resp. to Interrog. No. 10." Plaintiff's trust account was charged a total of $10.40 to cover the cost of copying 104 pages. Pl. Dep. 47:24-48:4. Plaintiff contends each page was unclear, of poor quality, and unusable. Pl. Dep. 48:3-9. Plaintiff demanded a full refund of the amount charged against his account. Pl. Dep. 47:24-25. He and Defendant engaged in a verbal altercation over the incident. Pl. Dep. 47:13-23.

On November 8, 2010, Plaintiff filed a "602" complaint against Defendant relating to the October 21, 2010, copy incident and being overcharged.[3] Pl. Dep. 53:8-12. Plaintiff's 602 was reviewed by Defendant's supervisor, Vice Principal Lopez, on or before February 9, 2011. Pl.'s Opp'n Ex. F, "Lopez Feb. 9, 2011 Mem." Defendant was interviewed by Lopez regarding the 602 on February 9, 2011. Id.

### C. Plaintiff's Habeas Appeal

Plaintiff's retaliation claim centers on his assertion that following the above events, Defendant intentionally denied Plaintiff PLU status at two different points in the course of Plaintiff's federal habeas appeal. The Court therefore summarizes the

---

[3] Plaintiff filed his corresponding conversion claim on May 8, 2011. Def's Mot. for Summ. J. Ex. 4, Decl. of Gretchen Brooks.

relevant procedural history of that appeal, taking judicial notice of all filings in that case: MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

On December 21, 2009, Plaintiff filed a petition for a writ of habeas corpus in the United States District Court for the Central District of California challenging his 2005 conviction for resisting arrest because the 2005 conviction enhanced his prison sentence when later, in 2009, he was convicted of attempted robbery. The habeas case was transferred to the Eastern District of California as case number Witkin v. Yates, 2:10-cv-00091-GEB-DAD ("the habeas case"). On February 11, 2011, in an order issued in response to Respondent's motion to dismiss, then-Magistrate Judge (now District Court Judge) Dale A. Drozd issued findings and recommendations rejecting Plaintiff's challenge to the 2005 conviction as time-barred, but construing the petition as a challenge to the 2009 conviction (as enhanced by the 2005 conviction). Judge Drozd thus recommended denying Respondent's motion to dismiss and he granted Respondent thirty days from the date of service of a District Court order adopting his findings and recommendations in which to file another motion to dismiss or an answer to Plaintiff's petition. Judge Drozd also granted both parties fourteen days to file objections to his findings and recommendations.

On February 22, 2011, Plaintiff filed objections to Judge Drozd's findings and recommendations. On March 10, 2011, Judge Garland E. Burrell, Jr., rejected Plaintiff's objections and adopted the findings and recommendations in full, directing Respondent to file responsive pleadings to the petition within thirty days, and directing Plaintiff to file an opposition to Respondent's motion, if one was filed, within thirty days after its service.

On April 5, 2011, Respondent filed a motion to dismiss, and it was served on Plaintiff on April 8, 2011. Plaintiff filed an opposition to Respondent's motion to dismiss on May 9, 2011.

On April 4 and November 28, 2011, Plaintiff moved for reconsideration of Judge Drozd's February 11, 2011, findings and recommendations. He claimed that Judge

Drozd's finding that the challenge to Plaintiff's 2005 conviction was time-barred was based on an error of fact. On December 14, 2011, Judge Drozd agreed and issued findings and recommendation granting Plaintiff's motions for reconsideration and vacating the February 11, 2011 order. On January 4, 2012, Judge Burrell adopted Judge Drozd's findings and recommendations in full and vacated his own March 10, 2011, order.

### D. Plaintiff's PLU Access To Library

Typically, Defendant's supervisor, and not Defendant, made the ultimate decision as to whether or not to grant an inmate PLU status. (Def.'s Resp. to Pl.'s Interrog. Set 1, No. 8.) However, an inmate whose PLU application was still pending could be allowed access to the law library prior to receiving formal PLU approval. Id. Defendant maintains that the acting senior librarian made this latter, interim, determination, not Defendant. Id. Plaintiff maintains Defendant actually called inmates up to the library on PLU status while formal approval was pending. Pl. Dep. 40:13-17. Plaintiff contends that in fact up until February 16, 2011, Defendant always called Plaintiff to the library with other PLUs while Plaintiff's PLU status was pending. Pl. Dep. 40:13-41:25.

#### 1. PLU Access February 16 to March 1, 2011

The fourteen-day filing deadline for filing objections to Judge Drozd's February 11, 2011, findings and recommendations in the habeas case entitled Plaintiff to fourteen days of PLU status. 15 Cal. Code Regs. § 3122(b). Sometime between February 11, 2011, and February 16, 2011, Plaintiff submitted the judge's order, along with his PLU application, to the law library. Pl. Dep. 55:12-56:18.

Plaintiff claims that Defendant did not call him up to the law library with the other PLUs on February 16, 17, 22, 23, 24, 25, and 28, 2011. Pl. Dep. 76:3-5. Plaintiff states that on February 16, 2011, he went to the library during yard hours and asked Defendant why she did not call him up with the other PLUs that day. Pl. Dep. 75:14-17. Plaintiff alleges that Defendant responded that she was not going to call him to the library with the other PLUs anymore because he filed a 602 against her. Pl. Dep. 75:18-

7

1 76:2. On that day, Plaintiff was forced to access the library on GLU status during his
2 designated yard time. Pl. Dep. 76:3-7. The yard did not open again for the rest of the
3 month. Pl. Dep. 75:5-7. Plaintiff then tried to use the law library as a PLU on February
4 17, 24, and 28, but was denied each time by Defendant, who either refused to grant
5 Plaintiff PLU access or physically blocked Plaintiff from entering the library. Pl. Dep.
6 59:1-15; Pl. Ex. E at 1-3; Pl. Ex. G at 2. Plaintiff did gain PLU access on February 25,
7 but only because Defendant's supervisor instructed Defendant to let Plaintiff in. In sum,
8 Plaintiff was only able to access the library on February 16, 2011, as a GLU, and again
9 on February 25, 2011, as a PLU. Id.

10 Plaintiff contends that because his access to the law library was so limited, the
11 objections he filed to Judge Drozd's February 11, 2011 findings and recommendations
12 in the habeas case were poorly researched and drafted. Pl. Second Am. Compl. at 12.
13 Only after Plaintiff filed his subsequent motions for reconsideration did Judge Drozd
14 ultimately vacate his February 11, 2011 order. Id.

15 Defendant kept library access logs in the regular course of business as a part of
16 her duties as the law librarian.[4] Solis Decl. ¶ 2. These logs indicate that Plaintiff's
17 overall Facility C law library access was consistent with the amount of physical access

---

[4] While these logs are hearsay, they are admitted under the business records exception to the hearsay rule. See Fed. R. Evid. 803(6) (business records may only be admitted as an exception to the hearsay rule once it is shown, through the testimony of a custodian of records or other qualified witness, or through certification, that the evidence is kept in the regular course of business and was made at or near the time of the event at issue.) Through her declaration, Defendant has sworn to the authenticity of these logs, affirming that as law librarian she was required to and did keep them in the regular course of prison business, and that the copies presented to the Court are true and correct copies of the actual logs she maintained during the dates in question. Solis Decl. ¶ 2.
  Plaintiff raised no objection to the authenticity of these library logs. Under Fed. R. Evid. 803(6) Commentary on 2014 Amendments ". . .[I]f the proponent has established the stated requirements of the exception . . . then the burden is on the opponent to show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Thus, for the purposes of this summary judgment motion, the logs are deemed authenticated and the Court may properly consider them in ruling on the motion. See Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987) (holding that in order for documents to be considered by the court on a motion for summary judgment, they must be "authenticated and attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56(e).") (internal quotation marks omitted).

the prison could accommodate for an inmate during this time span. Solis Decl. ¶ 5. They are, however, partially inconsistent with Plaintiff's claims since they demonstrate that Plaintiff accessed the law library on February 16, 25, and 28, without specifying whether that access was as a GLU or PLU.

Defendant declares that at no time did she intentionally misappropriate Plaintiff's trust funds, harbor retaliatory animus against Plaintiff, retaliate against him, or deny him access to the law library because of his prior complaints, grievances, or other speech. Solis Decl. ¶ 4.

### 2. PLU Access April 11 to April 22, 2011

Plaintiff further alleges that once he received Respondent's April 5, 2011 motion to dismiss, on April 11, 2011, Plaintiff filed another PLU application along with a copy of Judge Burrell's March 10, 2011, order. Pl. Opp'n Ex. D, "Inmate Appeal 602." However, Plaintiff was not called to the library as a PLU until April 21, 2011. Pl. Dep. 61:21-62:23. Plaintiff states he does not remember if he accessed the library on GLU status between the dates of April 8 and 21, 2011. Pl. Dep. 62:24-63:6. Plaintiff ultimately missed his filing deadline on this habeas case. Pl. Second Am. Compl. at 7-8.

Defendant's logs demonstrate that Plaintiff accessed the law library on April 11, 13, 19, 20, and 21, though again they do not indicate whether that access was as a GLU or PLU. Solis Decl. ¶ 5.

**VI. ANALYSIS**

**A. Conversion Claim**

Plaintiff does not dispute that he filed an untimely conversion claim by waiting until May 8, 2011 to file a claim that arose more than six months prior, on October 21, 2010. Under California Government Code § 911.2, Plaintiff must have filed his claim for conversion not later than six months after the accrual of the cause of action. Cal. Gov. Code § 911.2(a). Plaintiff offers no arguments to counter Defendant's contention that his conversion claim was untimely filed, and indeed concedes that summary judgment

should be granted on that claim. (ECF No. 42.)  Therefore, without evaluating the merits of Plaintiff's conversion claim, it will be recommended that Plaintiff's conversion claim be DISMISSED.

## B. First Amendment Retaliation

### 1. Legal Standard

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2004); *accord* Watison, 668 F.3d at 1114-15; Silva, 658 at 1104; Brodheim, 584 F.3d at 1269.

It is undisputed that Plaintiff engaged in protected conduct when he filed a 602 against Defendant.  Defendant's motion for summary judgment therefore turns on the following issues: (1) Did Plaintiff suffer an adverse action; (2) Does Plaintiff show a retaliatory animus on the part of Defendant; and (3) Did Defendant's actions further a legitimate penological purpose.  For the reasons set forth below, the Court finds that there exist genuine issues of material fact as to each element of Plaintiff's First Amendment retaliation claim, and so recommends that Defendant's motion for summary judgment on this claim be DENIED.

### 2. Adverse Action

#### a. Standard

To qualify as adverse, the action taken against Plaintiff must be sufficient to chill an inmate of ordinary firmness from exercising his First Amendment rights. Brodheim, 584 F.3d at 1269-70.  Courts have held that even the mere threat of an adverse action

can be sufficient to make out a retaliation claim, regardless of whether it is carried out. Id. at 1270; see also Rhodes, 408 F.3d at 568, n. 11; Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994). Moreover, the threat need not be explicit; even an implicit threat may be sufficient, so long as a reasonable finder of fact could interpret the threat as intimating that some form of punishment or adverse action would follow. Id. (citing Okwedy v. Molinari, 333 F.3d 339, 343 (2d Cir. 2003).

### b. Defendant's Argument

To support her argument in favor of summary judgment, Defendant argues that if any denial of access did occur, "it [was] not sufficient to rise to the level of a First Amendment retaliation claim" because Plaintiff accessed the law library numerous times during the time periods in question. D's Mot. Summ. J. at 10.

In support, Defendant cites the Ninth Circuit's decision in Rhodes v. Robinson, 399 Fed. Appx 160 (9th Cir. 2010). In that case, the plaintiff alleged that the defendant's failure to return the plaintiff's original grievance documents and failure to speak personally with the plaintiff about the grievance was in retaliation for plaintiff's filing of the grievance against said defendant. The Ninth Circuit affirmed the district court's granting of defendants' summary judgment motion. The Court held that as plaintiff's grievance was handled by a grievance panel, he was not entitled to speak directly to the defendant about his grievance. Furthermore, as the plaintiff's grievance was fully processed, the defendant's actions "[were] not an adverse action sufficient enough to support a retaliation claim because it did not chill Rhodes' exercise of his First Amendment rights." Rhodes II, 399 Fed. Appx at 163 (internal quotation marks omitted).

Rhodes II found that the action taken against the plaintiff was not sufficiently adverse because the plaintiff still achieved the result he sought, that is, the processing of his grievance. Defendant relies on Rhodes II to argue that, here, Plaintiff likewise achieved the result he sought: adequate access to the law library. Defendant does not address Plaintiff's entitlement to PLU status on those dates or whether Plaintiff's access

11

to the law library was on PLU or GLU status.[5]

#### c.  Plaintiff's Argument

Plaintiff, on the other hand, argues that Defendant engaged in an adverse action when she intentionally denied Plaintiff PLU access to the library on dates when he was entitled to it: February 16, 17, 22, 23, 24, 25, and 28, 2011, and between April 11 and 22, 2011.  Plaintiff alleges that Defendant's intentional denial of PLU access limited Plaintiff's ability to adequately research and draft his legal papers and forced Plaintiff to miss court-ordered deadlines.  Pl. Opp'n at 6-7.  Plaintiff alleges that Defendant's actions would have chilled a person of ordinary firmness.  Plaintiff does not directly address Defendant's contention that the sign-in logs indicate Plaintiff had sufficient access to the law library.

#### d.  Discussion

As an initial matter, Defendant does not dispute that the intentional denial of access to the prison law library would constitute an adverse action.  Smith v. Goss, No. 1:10-cv-01814-LJO-JLT, 2013 WL 6070362, at *4 (E.D. Cal. Nov. 18, 2013) (Plaintiff stated cognizable claim where corrections officer intentionally prohibited Plaintiff from accessing the law library in retaliation for Plaintiff appealing his Rules Violation conviction).  However, Defendant and Plaintiff each seem to have different theories about what the "adverse action" in question actually is. Defendant focuses on the end result: Defendant believes Plaintiff had sufficient access to the library, hence there was no adverse action. Plaintiff, on the other hand, focuses on Defendant's stated intent: notwithstanding that he had some, albeit reduced, actual access to the library, Defendant's statement of intent to deny Plaintiff PLU access because of his protected conduct was sufficient to constitute an adverse action.

---

[5] In her reply papers, Defendant argues that Plaintiff was not entitled to PLU status.  The Court will not consider Defendant's argument, as discussed below in subsection (VI)(B)(5).

Plaintiff's interpretation of what constitutes adverse action more accurately reflects applicable law.

Under Brodheim, Plaintiff need not have suffered actual harm, i.e., exclusion from the law library, so long as he can show Defendant intimated an intent to deny him PLU status in retaliation for his 602. Brodheim, 584 F.3d at 1270.

Rhodes II, relied upon by Defendant, is inapplicable here. There, Plaintiff alleged as adverse actions Defendant's refusal to communicate personally with Plaintiff regarding his appeal and Defendant's failure to return to Plaintiff Plaintiff's grievance paperwork. Rhodes II, 399 Fed. Appx. at 163. The Court found that neither of these actions interfered with Plaintiff's ability to have his appeal fully processed, and so they did not constitute an adverse action sufficient to support a retaliation claim. Id. Here, it remains an open question whether the adverse action alleged—Defendant's denial of PLU access—in fact occurred and harmed Plaintiff.

Defendant also incorrectly focuses on the actual library access retained by Plaintiff. The question is not whether Plaintiff suffered a significant or insignificant diminishment in library access; the issue is whether Defendant threatened to deny Plaintiff a right of access in retaliation for his pursuit of a First Amendment right. At this point the evidence is equivocal and the Court cannot determine if Plaintiff was rightfully entitled to PLU status on the days he was denied it. If he was, Plaintiff could have judgment in his favor even if Defendant's attempts to exclude him were unsuccessful or ineffective. See Brodheim, 584 F.3d at 1270. ("The mere *threat* of harm can be an adverse action, regardless of whether it is carried out.") (emphasis in original).

With questions remaining as to how and under what status and circumstances Plaintiff had a right to access and did access the library on February 16, 25, and 28,

2011, and between April 11 and 21, 2011, the Court must recommend denial of Defendant's summary judgment motion.[6]

### 3. Retaliatory Animus

#### a. Standard

The second element of a First Amendment retaliation claim focuses on causation and motive. See Brodheim, 584 F.3d at 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct," i.e., that Defendant harbored retaliatory animus when he or she engaged in the adverse action. Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce, 351 F.3d at 1289 (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

In this Circuit, Plaintiff need "only put forth evidence of retaliatory motive that, taken in the light most favorable to him, presents a genuine issue of material fact as to" Defendant's motivation. Brodheim, 584 F.3d at 1271 (citing Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003)) (internal quotation marks omitted). This requires Plaintiff to offer either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence: (1) proximity in time between the protected conduct and the alleged retaliation, (2) expressed opposition to the conduct, or (3) other evidence that the reasons proffered by Defendant for the adverse action were false and pretextual.

---

[6] In so doing, the Court cannot but note in passing that even though the ruling here, if adopted, will enable Plaintiff to seek vindication of an important constitutional right at trial, it is difficult to anticipate that he sustained actual damages as a result of Defendant's alleged actions since he ultimately prevailed on the habeas motion then pending. Plaintiff may want to consider this point in deciding how to proceed.

14

McCollum v. California Department of Corrections and Rehabilitation, 647 F.3d 870, 882 (9th Cir. 2011) (citing Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)) (quotation marks omitted).

### b. Defendant's Argument

Defendant argues Plaintiff cannot prove that Plaintiff's filing of a grievance against Defendant was a substantial motivating factor behind Defendant's alleged restriction of his access to the library. Defendant claims several months passed between Plaintiff's filing of the 602 and Defendant's alleged adverse action, a gap too attenuated to suggest a retaliatory animus. Defendant also points to the substantial number of times Plaintiff accessed the law library even after between the filing of the 602.

### c. Plaintiff's Argument

In addition to his claim that Defendant actually told Plaintiff on February 16, 2011, that she would no longer be calling him up with the other PLUs because he had filed a grievance against her[7], Plaintiff relies upon circumstantial evidence of Defendant's retaliatory animus toward: Plaintiff claims that prior to February 16, 2011, Defendant always called Plaintiff up with other PLUs when Plaintiff's PLU application was pending, and then stopped doing so. Defendant relented and admitted Plaintiff on February 25, 2011, only after her supervisor instructed her to do so. Finally, the investigation of Plaintiff's November 8, 2010, grievance did not culminate until February 10, 2011, the date of the memorandum signed by Defendant's supervisor. Thus Defendant likely did not even know about the grievance until just before the adverse action occurred.

### d. Discussion

Viewing the evidence presently before the Court in the light most favorable to

---

[7] Without analyzing the merits, the Court rejects Defendant's argument that this statement should be stricken under the "bad-faith declaration" doctrine of Fed. R. Civ. P. 56(h). Defendant's doubts about the credibility of Plaintiff's evidence are matters for cross-examination at trial.

Plaintiff, there is sufficient circumstantial evidence to lead a trier of fact to conclude that Defendant threatened to and did limit Plaintiff's PLU access to the law library because of the 602 he filed. Summary judgment is therefore not available.

### 4. Legitimate Penological Purpose

#### a. Standard

Plaintiff must also demonstrate "that there were no legitimate correctional purposes motivating the actions he complains of," Pratt, 65 F.3d at 808, and the Court must "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." Id. at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)). In evaluating the existence of a legitimate correctional goal, there must be a valid, rational connection between the rule, regulation, or action and the legitimate, neutral governmental interest put forward to justify it. Brodheim, 584 F.3d at 1272-73 (citing Shaw v. Murphy, 532 U.S. 223, 228 (2001)) (quotation marks omitted). In addition, courts should consider (1) the existence of alternate means of exercising the right available to inmates; (2) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (3) the absence of ready alternatives available to the prison for achieving the governmental objectives. Id. (citing Shaw, 532 U.S. at 228) (quotation marks omitted).

#### b. Defendant's Argument

Defendant's argument in this regard is brief: the prison was suffering from an overpopulation crisis and Defendant needed to balance the limited library resources against the large inmate population.

#### c. Plaintiff's Argument

Plaintiff argues that Defendant's actions were contrary to a legitimate penological goal because they directly violated established regulations regarding CDCR law library access. Under the regulations, Plaintiff was entitled to PLU status. And, Defendant's overpopulation claims notwithstanding, all other PLU status prisoners were called to the

16

library throughout this period when Plaintiff was not. Pl. Dep. 58:5-21; Pl. Ex. E at 1-3.[8]

### d.   Discussion

Assuming Plaintiff can show that he suffered an adverse action and that Defendant harbored a retaliatory animus, the Court still must grant Defendant summary judgment if she can show that a reasonable trier of fact would have no choice but to find that Defendant was motivated by a legitimate penological purpose.  Defendant has not made this showing.

First, Defendant proffers only Plaintiff's deposition testimony in support for her contention that PVSP was experiencing a population overcrowding crisis.[9]  Defendant similarly fails to support her claims that Plaintiff's law library access was the most the prison could accommodate during that time and that access was "often" limited due to excess demand.  Solis Decl. ¶ 5.

Defendant has therefore failed to show a "valid, rational connection between the [adverse] action and the legitimate, neutral governmental interest put forward to justify it." Brodheim, 584 F.3d at 1272.

Taking Plaintiff's allegation that other inmates were admitted to the library on PLU status on the dates in question as true, a reasonable trier of fact could conclude that population problems notwithstanding, the library could have accommodated Plaintiff on the dates in question.  Therefore, Defendant's request for summary judgment will be DENIED.

### 5.   Plaintiff's Entitlement to PLU Status

Finally, the Court notes that Defendant made a new argument for the first time in

---

[8] Plaintiff cites to his Exhibit E, the PVSP library attendance logs, to support his claim that other inmates were called to the library on PLU status even when Plaintiff was not.  As already discussed, the logs do not distinguish between PLUs and GLUs.  Plaintiff has not provided competent evidence that the individuals whose names appear in the attendance logs were in fact PLUs, much less that they were all the PLUs.

[9] For the reasons stated in note 1, the Court will not rely on Plaintiff's testimony to support facts pertaining to the prison and its administration.

17

her reply brief:[10] that Plaintiff has not shown Defendant's conduct could not "reasonably advance a legitimate penological goal" because Plaintiff, having failed to submit documentation of a pending court deadline, was properly denied PLU status.[11]  D's Reply Br. at 2. Since the orders in question were favorable to Plaintiff, there was no need for him to file any objections and no need for him to access the library as a PLU. Id.

As there exists a dispute regarding Plaintiff's entitlement to PLU status, the Court will not consider this argument.

## VI.  DEFENDANT'S MOTION FOR AN EXTENSION OF TIME

Defendant timely filed her December 11, 2015, motion for a thirty-day extension of time to file a dispositive motion, but the Court failed to address it before Defendant filed the instant motion for summary judgment on January 15, 2016.  Good cause having been shown, Defendant's motion for an extension of time to file a dispositive motion will be GRANTED, NUNC PRO TUNC to December 15, 2015. Fed. R. Civ. P. 60(b); see also Matthies v. Railroad Retirement Bd., 341 F.2d 243, 248 (8th Cir. 1965) ("All courts have inherent power to enter orders nunc pro tunc to show that a thing was done at one time which ought to have been shown at that time.")  Defendant's January 15, 2016 motion for summary judgment is therefore timely.

## VII.  DEFENDANT'S REQUEST FOR JUDICIAL NOTICE

For the reasons set forth above in note 2, Defendant's motion requesting judicial notice of California Code of Regulations, Title 15, Sections 3120 to 3124 (ECF No. 40) will be GRANTED.

---

[10] Plaintiff did not file a surreply to address Defendant's newly raised argument, nor did he request leave to do so.

[11] Although Defendant advances this argument to support her "no legitimate penological purpose" claim, the Court believes it more appropriately applies to Defendant's "no adverse action" claim.

## VIII. CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant's motion for an extension of time to file a dispositive motion (ECF No. 37) is GRANTED, NUNC PRO TUNC to December 15, 2015; and

2. Defendant's motion requesting judicial notice (ECF No. 40) is GRANTED; and

IT IS HEREBY RECOMMENDED THAT:

3. Defendant's motion for summary judgment (ECF No. 39) be GRANTED IN PART and DENIED IN PART, consistent with this Order;

4. Plaintiff's conversion tort claim be DISMISSED with prejudice,

5. This action proceed against Defendant S. Solis on Plaintiff's First Amendment retaliation claim.

These Findings and Recommendation are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with these Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **fourteen** (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: June 7, 2016          /s/ *Michael J. Seng*
                             UNITED STATES MAGISTRATE JUDGE